### THE JACOB N. HASKELL.

(District Court, N. D. Florida. June 21, 1916.)

SEAMEN ⬦═══24—PARTIAL PAYMENT OF WAGES—CONSTRUCTION OF STATUTE.

Rev. St. § 4530, as amended by Act March 4, 1915, c. 153, § 4, 38 Stat. 1165, provides that "every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended: * * * Provided, such a demand shall not be made before the expiration of nor oftener than once in five days." Held that, where a vessel remains in a port five days after one payment has been there made, the seamen are entitled to demand and receive another payment, but such payment in any case need be only one-half of the amount earned since the last previous payment, leaving in the hands of the master one-half the wages earned during the voyage until its termination.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 123–128; Dec. Dig. ⬦═══24.]

In Admiralty. Suit by H. T. Paulsen and Alfred Wellestine against the schooner Jacob N. Haskell. Decree for libelants.

B. R. Coleman, of Pensacola, Fla., for libelants.
Sullivan & Sullivan, of Pensacola, Fla., for respondent.

SHEPPARD, District Judge. This is a libel brought by H. T. Paulsen and Alfred Wellestine, members of the crew of the American schooner Jacob N. Haskell, for the full amount of their wages earned on a voyage from Newport News to Guadaloupe to Pensacola, less the sums theretofore paid on account. The seamen, after arriving in Pensacola and receiving one payment in port, claim a right under section 4530, R. S. U. S., and section 4, c. 153, Act March 4, 1915, 38 Stat. 1165, to another partial payment of wages at the expiration of five days while the vessel remains in port. The master of the ship contends that the "half part" of the wages of the seamen under the provisions of the act are payable only once in each port where the vessel takes or delivers cargo after the voyage is commenced, and after the payment of one installment of wages no other payments are demandable in that port.

After sailing from Newport News, the master of the Haskell upon arrival at Guadaloupe paid to each of the libelants a "half part" of the wages then earned. Arriving at Pensacola, the seamen made an-

other demand for wages payable under the statute. The master of the vessel, according to his construction of the act, paid the seamen, not only a "half part" of the wages earned since the payment at Guadaloupe, but in addition one-half of that portion of the wages theretofore withheld by him at the time of the payment in Guadaloupe.

After the expiration of about five days from the date of the last payment in Pensacola, the libelants made another demand for a partial payment of wages which the master refused, on the theory that the seamen were entitled to but one payment in port. Libelants construed this refusal as a violation of the act relieving them from the obligation of further service. They left the ship and libeled in rem for their wages, less the partial payments received.

This case presents the question of whether or not the seamen were entitled on demand to receive more than one partial payment of wages in any one port at which the vessel may stop for cargo purposes, and to answer it correctly the legislative intent must be ascertained. The pertinent provisions of the act in question are as follows:

Sec. 4530. "Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned. * * * "

The peculiar nature of maritime commerce requires that there should be safeguards thrown around this service to protect shipping, and to insure performance by seamen of their contracts. I am of opinion that Congress in the passage of this statute intended that the master of the ship should at all times have in his hands to the credit of the seaman a sum equal to that which has been paid to him out of the wages earned until the end of the voyage.

The act provides against the seamen making demands at intervals of less than five days, the first of which can be made after the expiration of that interval at any port where the vessel loads or discharges cargo, after the commencement of the voyage.

The libelants were entitled on demand to receive while in port after the expiration of five days a second partial payment of wages earned since the last payment. The method of computation used by the master as above referred to is not in the view of the court warranted by the statute, and he was not called upon to pay at Pensacola a sum greater than half of the wages earned by the seamen since the last payment at Guadaloupe. On the last demand made in Pensacola he was only required to pay a sum equal to one-half the wages earned since the last payment in port.

I conclude that the seamen were within their rights in demanding a second payment while in port. They were only in error as to the amount, as likewise was the master. In refusing the partial payment, the master violated the provisions of the act, which by its express terms relieves the seamen from further obligation to service, and they

are therefore entitled to recover the amount of wages due up to the time of leaving the ship, less the sum total of the partial payments theretofore received.

A decree for libelants will be entertained.